**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ROGER BIRT, § § § *Plaintiff* § § § v. § § DAVID METCALFE; § DAVID BRIAN; § MERCANTILE DIAMOND GROUP, § INC, a Canadian corporation; MERCAN- § TILE DIAMOND HOLDINGS, a Cana- § dian corporation; § BCB FINANCIAL GROUP INC., a Cana- § dian corporation; THE COLOURED DIA- § MOND EXCHANGE, INC., a Canadian § corporation; § PREMIER DIAMOND GROUP (NORTH § AMERICA) LTD., a Canadian corpora- § tion; and GUILD LABORATORIES, § INC., a California corporation § § *Defendants*. § § | CIVIL ACTION NO. _____ JURY |

**ORIGINAL COMPLAINT**

Plaintiff Roger Birt, files this Original Complaint and would show the Court as follows:

**PARTIES**

1. Plaintiff Roger Birt is an individual who resides, and at all relevant times, resided in Smith County, Texas.

2. Defendant David Metcalfe ("Metcalfe") is an individual who is a citizen of Canada. This Defendant resides, and at all relevant times resided, outside of the state of Texas. This Defendant may be served via the Hague Convention on International Service Abroad Section 10A, through

Plaintiff's Original Complaint                                                                                                                1

international registered mail at Skyway Business Park, 170 Attwell Drive, Suite 100, Toronto, Ontario M9W 5Z5.

3. Defendant David Brian ("Brian") is an individual who is a citizen of Canada. This Defendant resides, and at all relevant times resided, outside of the state of Texas. This Defendant may be served via the Hague Convention on International Service Abroad Section 10A, through international registered mail at First Canadian Place 100 King Street West, Suite 5600, Toronto, Ontario, Canada M5X 1C9

4. Defendant Mercantile Diamond Group, Inc. ("MDG") is a Canadian corporation with its principal place of business in Canada. This Defendant can be served via the Hague Convention on International Service Abroad Section 10A, through international registered mail at its headquarters located at Skyway Business Park, 170 Attwell Drive, Suite 650, Toronto, Ontario M9W 5Z5.

5. Defendant Mercantile Diamond Holdings, ("MDH") is a Canadian corporation with its principal place of business in Canada. This Defendant can be served via the Hague Convention on International Service Abroad Section 10A, through international registered mail at its headquarters located at 4576 Yonge Street, Suite 602B, Toronto, ON M2N 6N4.

6. Defendant BCB Financial Group, Inc. ("BCB Financial") is a Canadian corporation with its principal place of business in Canada. This Defendant can be served via the Hague Convention on International Service Abroad Section 10A, through international registered mail at its headquarters located at 4576 Yonge Street, Suite 602B, Toronto, ON M2N 6N4.

7. Defendant The Coloured Diamond Exchange, Inc. ("Colored Diamond Exchange") is a Canadian corporation with its principal place of business in Canada. This Defendant can be served via the Hague Convention on International Service Abroad Section 10A, through international

registered mail at its headquarters located at 55 Eglington Avenue East, Suite 803, Toronto, Ontario, Canada M4P 1G8.

8. Defendant Premier Diamond Group (North America), Ltd. ("Premier) is a Canadian corporation with its principal place of business in Canada. This Defendant can be served via the Hague Convention on International Service Abroad Section 10A, through international registered mail at its headquarters Skyway Business Park 170 Attwell Drive, Suite 100, Toronto, Ontario M9W 5Z5.

9. Defendant Guild Laboratories, Inc. ("Guild Labs") is a California corporation with its principal place of business in California. This Defendant can be served at its principal place of business located at 550 S. Hill St. #1188, Los Angeles, CA 90013.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because the controversy is between citizens of different States and in which citizens or subjects of a foreign state are additional parties. Further, the amount in controversy exceeds the minimum jurisdictional limits. All defendants maintain minimum contacts with the State of Texas by purposefully availing themselves of the benefit of doing business in Texas. Specifically, Defendants by and through their agents, representatives, and/or vice-principals, directly communicated with Plaintiff via telephone, email, and mail regarding the acts and omissions alleged herein. Defendants had actual and constructive knowledge that Plaintiff was in located in Texas when these communications took place and at all relevant times. Moreover, Defendants shipped gemstones into the State of Texas, accepted payments sent by Plaintiff from the State of Texas, and commonly traveled to the State of Texas for business purposes including seminars and marketing campaigns. Moreover, Defendants traveled to Texas for the sole purpose of bringing gemstones directly to Plaintiff in order for Plaintiff to purchase the gemstones.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Alternatively, to the extent the court determines there is no other district in which this action might otherwise have been brought, venue is proper in this judicial district pursuant to 28 U.S.C §1391(b)(3) because at least on Defendant is subject to the court's personal jurisdiction with respect to this action.

## FACTUAL BACKGROUND

12. Plaintiff adopts and realleges each paragraph above as if fully set forth herein.

13. Plaintiff received marketing materials from Metcalfe, Brian, and MDG regarding the market for gemstones including colored diamonds. These materials claimed the market for such colored diamonds was steadily on the rise, rarely if ever declined, and represented a lucrative investment opportunity. Over the next several months, Metcalfe, Brian, and MDG then communicated with Plaintiff in more detail about colored diamonds, the market, and the safety of any potential investments.

14. In January 2010, Metcalfe, Brian, and MDG contacted Plaintiff in an effort to sell gemstones to Plaintiff. These Defendants knew Plaintiff had no interest in purchasing gemstones other than to hold and later sell at a higher price. These Defendants made representations, including but not limited to, that the gemstones were highly valuable, extremely rare, and of "museum quality." These Defendants sent Plaintiff numerous brochures, articles, and other materials that expounded upon the lucrative nature of the colored diamond market. These Defendants further represented these gemstones were a sound investment for Plaintiff, and that due to their various desirable qualities, the value of these gemstones would increase significantly, if not exponentially in a short time.

15. Additionally, these Defendants represented that, at any time, they would buy back the marigold diamonds for the full purchase price, should Plaintiff wish to "liquidate." Put simply, these Defendants represented the purchase of these gemstones to be a risk-free investment.

16. Relying on these representations, Plaintiff purchased a 1.04 carat marigold colored diamond, GIA: 16160552; and a 1.07 carat marigold colored diamond, GIA: 15144406. (together the "marigold diamonds"). Metcalfe, Brian, and MDG represented the value of the marigold diamonds to be at least $39,500 each. Plaintiff purchased the marigold diamonds by trading in another stone he previously purchased from these defendants in consideration for a "trade allowance" or a credit of $76,500. Plaintiff also paid these Defendants $2,500, which represents the difference between his "trade allowance" and the value of the two marigold diamonds as represented by these Defendants.

17. These Defendants shipped the marigold diamond to Plaintiff's home address located in Tyler, Texas.

18. In March of 2010, Metcalfe, Brian, and MDG again approached Plaintiff about purchasing another more expensive gemstone. These Defendants represented this stone to be worth more than twice the value of both marigold diamonds combined.

19. These Defendants made similar representations to Plaintiff about the quality and value of this gemstone, including, but limited to claiming it to be highly valuable, extremely rare, and of "museum quality." These Defendants further represented this gemstone was a sound investment for Plaintiff, and that due to its various desirable qualities, the value of this gemstone would increase significantly, if not exponentially in a short time.

20. Relying on these representations, Plaintiff purchased a 1.01 carat purplish pink colored diamond, GIA: 16773339 ("purplish pink diamond"). Metcalfe, Brian, and MDG represented the

value of the purplish pink diamond to be at least $95,900. Plaintiff purchased this diamond by paying $95,900 for the diamond and $75 for shipping and insurance.

21. Defendant Metcalfe then met Plaintiff in person to deliver the purplish pink diamond. During this meeting, Metcalfe again assured Plaintiff of the quality and value of the purplish pink diamond, stating it was a risk-free investment.

22. In January of 2011, Metcalfe, Brian, and MDG again approached Plaintiff about purchasing yet another more expensive gemstone. This time Defendants represented this stone to be worth over $145,000.

23. Once again, these Defendants made the familiar representations to Plaintiff about the quality and value of this gemstone, including, but limited to claiming it to be highly valuable, extremely rare, and of "museum quality." These Defendants further represented this gemstone was a sound investment for Plaintiff, and that due to its various desirable qualities, the value of this gemstone would increase significantly, if not exponentially in a short time.

24. Relying on these representations, Plaintiff purchased a 1.01 carat deep pink colored diamond, GIA: 2125856578 ("deep pink diamond"). Metcalfe, Brian, and MDG represented the value of the deep pink diamond to be at least $145,000. Plaintiff purchased the deep pink by paying $145,000 for the diamond and $75 for shipping and insurance.

25. Over the next several years, Metcalfe, Brian, and MDG communicated with Plaintiff numerous times, discussing the rise of the colored diamond market in general and the correlating appreciation of the diamonds Plaintiff purchased. When Plaintiff would inquire about selling his diamonds, these Defendants consistently encouraged Plaintiff to continue to hold his diamonds and allow them to continue to increase in value.

26. In January 2014, Plaintiff received notice from Metcalfe, Brian, and MDG, that MDG had been sold to Mercantile Diamond Holdings and BCB Financial Group, Inc. Metcalfe and MDG represented that MDH and BCB Financial fully assumed all current and past obligations pertaining to transactions, contractual obligations, or any personal arrangements regarding Plaintiffs colored diamonds. Metcalfe, Brian, and MDG directed all future communication to MDH and BCB Financial.

27. Plaintiff contacted Metcalfe, Brian, and MDG who confirmed that all communication should be directed to MDH and BCB Financial. Metcalfe, Brian, and MDG assured Plaintiff that he could always "cash out" his diamonds for the full purchase price, but encouraged him to continue to hold out because they were still increasing in value.

28. Plaintiff contacted Metcalfe, Brian, MDG, MDH, and BCB Financial and inquired about selling his diamonds. These Defendants told Plaintiff that Metcalfe started a new company called Premier Diamond Group (North America), Ltd ("Premier") engaged in the same business as these Defendants. Metcalfe, Brian, MDG, and Premier, recommended Plaintiff get an appraisal of the value of the diamonds and referred Plaintiff to Defendant Guild Laboratories, Inc. ("Guild Labs"). These Defendants stated they send many of their clients to Guild Labs who is highly qualified and recommended.

29. In March 2015, Guild Labs performed an appraisal of Plaintiffs four diamonds with the respective values below:

    a.    the 1.04 carat marigold diamond, GIA: 16160552 of $45,760

    b.    the 1.07 carat marigold diamond, GIA: 15144406 of $51,360

    c.    the 1.01 carat purplish pink diamond, GIA: 16773339 of $116,150

    d.    the 1.01 carat deep pink diamond, GIA: 2125856578 of $181,800

30. Based on Guild Labs' appraisal, the total appraised value of Plaintiff's four diamonds was $395,070.

31. Plaintiff contacted Metcalfe, Brian, MDG, and Premier about selling his diamonds on the market. These Defendants said they would begin to locate a buyer. However, these Defendants did not ever provide a potential buyer or any information for a potential buyer.

32. In October 2015, Plaintiff received correspondence from MDH and BCB Financial stating The Colored Diamond Exchange, Inc ("Colored Diamond Exchange") had acquired all assets, obligations, and liabilities of MDH and BCB. Plaintiff received similar correspondence from Colored Diamond Exchange.

33. Plaintiff contacted Colored Diamond Exchange regarding purchasing or selling his diamonds. Colored Diamond Exchange refused to purchase or aid Plaintiff in selling his diamonds, stating they never agreed to such obligations. Instead, Colored Diamond Exchange attempted to convince Plaintiff to set his stones in gold jewelry in order to "increase the value of the pieces" in order to allow Plaintiff to sell the diamonds on his own. Colored Diamond Exchange offered to perform this setting for approximately $27,000. Plaintiff did not accept this offer.

34. Plaintiff contacted Metcalfe, Brian, MDG, and Premier and requested they fulfil their obligation to find a buyer for Plaintiff's diamonds, or purchase the diamonds themselves. These Defendants misrepresented they were unable to purchase the diamonds but assured Plaintiff that a buyer would be easy to find and he would have no trouble selling the diamonds for their full value.

35. Plaintiff attempted to sell his diamonds on his own, hoping to cash in on his investment. Unfortunately, the best offer Plaintiff received was $40,000 for the purplish pink diamond. This represented $55,900 less than Plaintiff originally paid for it, and $76,150 less than Guild Labs'

appraisal. Plaintiff learned his diamonds were not of the quality, character, or value Defendants had previously represented.

36. In December of 2016, Plaintiff received a second appraisal of his remaining three stones by an appraiser other than Guild Labs. This neutral and disinterested appraiser valued the remaining three stones as follows:

    a.    the 1.04 carat marigold diamond, GIA: 16160552 of $3,500

    b.    the 1.07 carat marigold diamond, GIA: 15144406 of $5,550

    c.    the 1.01 carat deep pink diamond, GIA: 2125856578 of $12,200

37. The total appraisal of Plaintiff's three diamonds was $21,250. This is $181,500 less than Plaintiff originally purchased the same diamonds, and $257,670 less than Guild Labs' appraisal.

38. Plaintiff was shocked and disappointed that these diamonds not had not only failed to increase in value as promised by Defendants, but had seemingly decreased in value. Unbeknownst to Plaintiff, the diamonds were simply never worth what Defendants claimed.

## NEGLIGENCE CAUSES OF ACTION AGAINST ALL DEFENDANTS

39. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

40. Defendants made representations to Plaintiff in the course of Defendants' business and/or in a transaction in which Defendants had an interest.

41. Defendants supplied false information for the guidance of Plaintiff. This false information includes but is not limited to, the market for gemstones in general; the value, quality, and characteristics of the specific gemstones sold to Plaintiff; and the risk-free nature of the transaction in that Defendants promised to purchase the gemstones from Plaintiff for the full purchase price upon Plaintiff's request.

42. Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

43. Plaintiff justifiably relied on Defendants' representations. At all relevant times, Plaintiff was a consumer with no knowledge about the value, market, or other relevant information regarding colored diamonds.

44. Defendants' negligent misrepresentation proximately cause Plaintiff's injury.

## COMMON LAW FRAUD
## CAUSE OF ACTION AGAINST ALL DEFENDANTS

45. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

46. At the time Defendants made the foregoing representations and/or omissions, these Defendants knew they were false. Specifically, these Defendants knew the subject gemstones were not worth what they said they were worth. Defendants also knew they had no intention of ever repurchasing the gemstones from Plaintiff for the purchase price, despite representing the same to Plaintiff. Defendants held themselves out as experts in their field, and gave assurances to Plaintiff. Defendants knew Plaintiff would rely on Defendants representations in deciding whether to purchase gemstones.

47. Plaintiff justifiably relied upon the representations and omissions made by these Defendants when deciding whether to purchase the gemstones, deciding whether to "trade up," and deciding whether to attempt to sell the gemstones or continue to hold the gemstones.

48. The misrepresentations and/or omissions made by these Defendants were material insofar as Plaintiff made decisions based on Defendants recommendations and his perception of Defendants expertise.

49. In making the misrepresentations and/or omitting the pertinent facts, these Defendants deceived and defrauded Plaintiff. Accordingly, the conduct of these Defendants' was such as to rise to the level of common law fraud and gross negligence.

50. Plaintiff was damaged as a direct and proximate result of Defendants' fraudulent conduct.

## FRAUD BY NONDISCLOSURE
## CAUSE OF ACTION AGAINST ALL DEFENDANTS

51. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

52. Defendants concealed from and failed to disclose certain facts to Plaintiff. These include, but are not limited to, facts about the market for gemstones in general; the value, quality, and characteristics of the specific gemstones sold to Plaintiff; and the risk-free nature of the transaction in that Defendants promised to purchase the gemstones from Plaintiff for the full purchase price upon Plaintiff's request.

53. These Defendants had a duty to disclose the true facts to Plaintiff.

54. These facts were material. These Defendants knew Plaintiff was ignorant of the facts and he did not have an equal opportunity to discover the facts.

55. These Defendants were deliberately silent when they had a duty to speak.

56. By failing to disclose the facts, the Defendants intended to induce Plaintiff to take certain actions or refrain from acting—all for these Defendants' benefit and at the expense of Plaintiff

57. Plaintiff relied on the Defendants' nondisclosure.

58. Plaintiff was injured as a result of acting without the knowledge of the undisclosed facts.

## TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT
## CAUSES OF ACTION AGAINST ALL DEFENDANTS

59. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

60. At all relevant times, Plaintiff was a consumer as defined by Texas law.

61. Plaintiff sought or acquired goods and services by purchase from all Defendants.

62. Defendants' conduct has violated the Texas Deceptive Trade Practices–Consumer Protection Act. Specifically, Defendants have committed the following "laundry list" violations, upon which Plaintiff relied to his detriment, and which are producing causes of Plaintiff's damages:

    a. Defendants caused confusion or misunderstanding as to the source, sponsorship, approval or certification of Defendants' goods or services;

    b. Defendants caused confusion or misunderstanding about affiliation, connection, or association with or certification by, another;

    c. Defendants represented that their goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have;

    d. Defendants represented that their goods or services were of a particular standard, quality, grade, style or model, when in fact they were another;

    e. Defendants advertised goods or services with intent not to sell them as advertised;

    f. Defendants represented that an agreement conferred or involved rights, remedies, or obligations which it did not involve; and

    g. Defendants failed to disclose information concerning goods or services which was known to Defendant at the time of the transaction with the intent to induce Plaintiff into a transaction into which Plaintiff would not have entered had the information been disclosed.

63. Additionally, Defendants actions conduct and course of action was unconscionable. Defendants took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree, and which was a producing cause of Plaintiff's damages.

64. Defendants engaged in the foregoing conduct knowingly and intentionally.

## CAUSES OF ACTION AGAINST MDG, MDH, BCB FINANCIAL, COLORED DIAMOND EXCHANGE, AND PREMIER

65. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

66. At all relevant times, Metcalfe and Brian were employees, agents, and vice-principals of MDG, MDH, BCB Financial, Colored Diamond Exchanged, and Premier.

67. Metcalfe and Brian's actions listed herein fell within the course and scope of their employment with MDG, MDH, BCB Financial, Colored Diamond Exchanged, and Premier and were directly related to said Defendants' business. Further, Metcalfe and Brian had actual and apparent authority from MDG, MDH, BCB Financial, Colored Diamond Exchanged, and Premier to conduct these actions. Metcalfe and Brian were corporate officers of said Defendants, had the authority to employ, direct, and discharge said Defendants' employees, and had been delegated the management of part of said Defendants' businesses. Therefore, said Defendants are liable for the acts and omissions of Metcalfe and Brian under the doctrines of vicarious liability, agency, and vice-principal.

## DAMAGES

68. Plaintiff adopts and re-alleges each paragraph set forth above as if fully set forth herein.

69. As a result of Defendants' knowing conduct, Plaintiff has suffered economic damages in excess of $319,900.

70. As a result of Defendants' knowing conduct, Plaintiff has suffered mental anguish damages in amount not less than the minimum jurisdictional limit of this Court.

71. As a result of Defendants' knowing and intentional conduct, Plaintiff is entitled to recover additional damages in an amount not less than the maximum amount permitted by applicable law based on the allegation of actual damages above.

72. Plaintiff has been forced to incur attorney's fees and other costs associated with the claims alleged herein. Plaintiff seeks to recover his reasonable and necessary attorneys' fees and expenses associated with prosecuting this action.

## EXEMPLARY DAMAGES

73. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

74. The damages alleged herein were the result of Defendants acts and/or omissions and exemplary damages are recoverable as defined by Texas Civil Practice and Remedies Code Chapter 41 and Defendants are liable for exemplary damages. Plaintiff has satisfied each element required to obtain exemplary damages. Plaintiff prays that the Court award exemplary damages.

## CLAIM FOR PREJUDGMENT INTEREST

75. Plaintiff seeks prejudgment interest at the maximum legal rate.

## FRAUDULENT CONCEALMENT AND DISCOVERY RULE

76. Plaintiff adopts and incorporates the previous paragraphs as if fully set forth herein.

77. As alleged herein, Defendants engaged in acts of fraudulent concealment, which should toll the statute of limitations until Plaintiff discovered the fraud or could have discovered the fraud with reasonable diligence. Defendant, with knowledge that a wrong had occurred, had a fixed purpose to conceal the wrong, and took affirmative steps to actively conceal the wrong from Plaintiff.

78. As a result of Defendants actions alleged herein, Plaintiff did not discover, nor could Plaintiff have discovered by the exercise of reasonable diligence, the existence of his causes of action against Defendants until a date less than two years before the date on which Plaintiff filed his Original Complaint.

79. Plaintiff filed this action within two years of the accrual of his causes of action. Therefore, Plaintiff's causes of action are timely filed and are not barred by any applicable statute of limitations.

## JURY DEMAND

80. Plaintiff requests that a jury be convened to try the factual issues of this case.

## PRAYER FOR RELIEF

81. Plaintiff prays that judgment be entered in his favor against Defendants, jointly and severally, for actual and exemplary damages, as requested herein, the costs of bringing this action, attorneys' fees, for prejudgment and post-judgment interest at the maximum legal rate, and for such other relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

/s/ Jeffrey T. Embry
Jeffrey T. Embry
State Bar No. 24002052
Attorney-in-Charge
George Cowden IV
State Bar No. 24071492
Hossley & Embry, LLP
515 S. Vine Avenue
Tyler, Texas 75702
(903) 526-1772
(903) 526-1773 Fax
jeff@hossleyembry.com
george@hossleyembry.com

**ATTORNEYS FOR PLAINIFF**